*FILED* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

| Presiding: The Honorable | **GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** (1) Motion for Transfer (Dkt. 17); (2) Motion to Dismiss First Amended Complaint (Dkt. 18)

This matter is before us on Defendant Kamala D. Harris's ("Defendant" or "Harris") above-titled Motions. We have reviewed the papers filed in support of and in opposition to these Motions and deem these matters appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.    Background**

   **A.    Factual Background**

Prime Healthcare Services, Inc. is a corporation based in Ontario, California that owns and operates twenty-eight hospitals throughout the country. (Dkt. 14 ("*Prime III* FAC") ¶ 21.) Plaintiff Prime Healthcare Foundation, Inc. is a non-profit public charity that owns seven non-profit hospitals in various states.[1]  (*Id.* ¶ 22.) Each of the hospitals owned by Prime Healthcare Foundation was donated by Prime Healthcare Services, Inc. (*Id.*) Defendant Harris is the California Attorney General. (*Id.* ¶ 24.)

This action ("*Prime III*") stems from Harris's allegedly improper de facto denial of Prime's acquisition of the Daughters of Charity Health System ("DCHS")—which included six hospitals located throughout California.[2] (*Id.* ¶ 1.) According to Prime, Harris entered into an illegal scheme with Service Employees International—United Healthcare Workers West ("UHW"), a labor union

---

[1] Prime Healthcare Services, Inc. and Prime Healthcare Foundation, Inc. will be referred to as "Plaintiffs" or "Prime," collectively.

[2] Harris approved the sale of DCHS to Prime, but conditioned it on Prime's satisfaction of over 300 various conditions. (*See Prime III* FAC ¶ 89.) According to Prime, these conditions "made it impossible" for Prime to run the hospitals in a financially and operationally viable manner, which effectively constituted a de facto denial of the sale. (*See id.* ¶ 92.)

*FILED* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

representing California hospital workers. (*Id.*) Prime asserts that, pursuant to this alleged scheme, Harris "refused to reasonably approve the sale of [DCHS] to [Prime] because Prime rejected UHW's extortionate demands to unionize workers at all Prime hospitals and did so in *quid pro quo* exchange for the union's continuing financial support of her political career, including her current candidacy for the U.S. Senate." (*Id.*)

    *Prime III* also alleged that UHW had previously interfered with Prime's acquisition of another hospital, Victor Valley Community Hospital ("VVCH"), by instructing Harris to deny a bankruptcy sale of VVCH to Prime, and Harris so agreeing. (*Id.* ¶ 48.) According to Prime, Harris's denial of the VVCH sale and her de facto denial of the DCHS sale "were not the proper exercise of her discretion under the Non-Profit Hospital Transfer Statute . . . but were instead based on her unlawful agreement with UHW and [UHW President Dave Regan] to prevent Prime from acquiring any non-profit hospitals in California unless Prime agreed to allow UHW to unionize all of its hospital workers in exchange for UHW's political support of [Harris]." (*Id.* ¶ 93.) Based on these allegations, *Prime III* sets forth claims for (1) violations of 42 U.S.C. § 1983, claiming that Harris's de facto denial of the DCHS sale deprived Prime of its rights under the Due Process clause, the Equal Protection clause, and the National Labor Relations Act; (2) declaratory relief that the Non-Profit Hospital Transfer Statute is facially unconstitutional; and (3) an injunction preventing Harris from enforcing the Non-Profit Hospital Transfer Statute—including, specifically, enforcing this statute with respect to the DCHS sale.

    Harris now moves to transfer this case to the United States District Court for the Southern District of California ("Southern District") in light of *Prime III*'s similarity with the following two prior actions: (1) *Prime Healthcare Services, Inc. v. Service Employees International Union, et al.*, 3:11-cv-02652 ("*Prime I*"), filed in the Southern District on November 15, 2011; and (2) *Prime Healthcare Services, Inc. v. Service Employees International Union, et al.*, 3:14-cv-02553 ("*Prime II*"), originally filed in the Northern District on August 25, 2014, but transferred to the Southern District on October 27, 2014. (Dkt. 17.) Harris alternatively moves to dismiss the *Prime III* FAC. (Dkt. 18.)

    **B.**    **Chronology of the Litigation**

        **1.**    *Prime I*

    Prime[3] filed suit in the Southern District on November 15, 2011, alleging that Service Employees International Union ("SEIU"), UHW, Kaiser Permanente, and a variety of Kaiser-related entities engaged in an antitrust conspiracy to eliminate Prime from the healthcare market. (*See Prime I* Dkt. 1.) The case was subsequently transferred to Judge Gonzalo P. Curiel. (*Prime I* Dkt. 52.) The First Amended Complaint was dismissed with prejudice on December 11, 2013. (*See Prime I* Dkts. 95-96.) Prime appealed this dismissal on December 30, 2013, (*Prime I* Dkt. 97), but, on March 2, 2016, the Ninth Circuit affirmed, (*see* Case No. 13-57185 Dkt. 66).

---

    [3] Although "Prime" is used to describe the plaintiff in *Prime I* and *Prime II*, neither of these actions included Prime Healthcare Foundation, Inc. as a named Plaintiff.

*FILED* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

### 2. *Prime II*

Prime filed this action in the Northern District on August 25, 2014, alleging that SEIU, UHW, and several related entities and individuals engaged in a Racketeering Influenced and Corrupt Organization Act ("RICO") conspiracy to either unionize Prime or force Prime out of the healthcare market. (*See Prime II* Dkt. 1.) On September 22, 2014, the *Prime II* defendants moved to transfer *Prime II* to the Southern District pursuant to the first-to-file rule. (*See Prime II* Dkt. 17.) The court granted this motion on October 24, 2014. (*Prime II* Dkt. 38.) The case was eventually transferred to Judge Curiel pursuant to the low number rule. (*See Prime II* Dkts. 40, 45.) The *Prime II* defendants moved to dismiss the Second Amended Complaint on May 15, 2015, (*Prime II* Dkt. 74), and Judge Curiel granted this motion on November 23, 2015, dismissing the SAC with prejudice, (*Prime II* Dkts. 86-87). Prime appealed this dismissal on December 22, 2015, (*see Prime II* Dkt. 91)—the appeal is currently pending, (*see* Case No. 15-56965).

### 3. *Prime III*

Prime filed the present action on September 21, 2015, (Dkt. 1), and filed the operative First Amended Complaint on November 12, 2015, (Dkt. 14). Harris brought the instant transfer Motion on November 30, 2015. (Dkt. 17.) For the reasons set forth below, we grant Harris's Motion and transfer the case to the Southern District pursuant to the first-to-file rule.

## II. Motion to Transfer Pursuant to the First-to-File Rule[4]

### A. Legal Standard

The first-to-file rule is a doctrine of federal comity that serves to promote judicial efficiency and avoid conflicting judgments. *See Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 749-50 (9th Cir. 1979). It permits a district court to transfer, stay, or dismiss an action when a similar action has been previously filed in another district. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991). As the first-to-file rule "normally serves the purpose of promoting efficiency[,]" it "should not be disregarded lightly." *Church of Scientology of Cal.*, 611 F.2d at 750.

Courts consider three factors in determining whether to apply the first-to-file rule: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010). But, "[t]he most basic aspect of

---

[4] Harris does not clearly delineate the grounds for the transfer Motion. Harris's Notice of Motion states that she "will move the Court for an order transferring this action to the Southern District of California, pursuant to 28 U.S.C. § 1404(a), on the ground that the interest of justice require transfer." (Mot. at 1.) However, Harris's Memorandum of Points and Authorities does not address the relevant § 1404(a) transfer factors. Instead, the Motion solely discusses transfer under the first-to-file rule. (*See* Mot. at 7-12.) Because we conclude that transfer is proper under the first-to-file rule, we decline to decide whether transfer is also proper under § 1404(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

the first-to-file rule is that it is discretionary," and "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Alltrade, Inc.*, 946 F.2d at 628 (internal quotation marks omitted). With this discretion, a court may decline to apply the first-to-file rule in the interests of equity. *Id.* at 1146, 1149 ("The circumstances under which an exception to the first-to-file rule typically will be made include bad faith, . . . anticipatory suit, and forum shopping." (internal quotation marks omitted)).[5]

### B. Analysis

#### 1. Chronology of the Actions

*Prime I* was filed in the Southern District on November 15, 2011. *Prime II* was filed in the Northern District on August 8, 25, 2014, and transferred to the Southern District on October 27, 2014. The present action was filed on September 21, 2015. Thus, this factor is satisfied.

#### 2. Similarity of the Parties

The Parties in each action need not be exactly identical—"the first-to-file rule requires only substantial similarity of parties." *Kohn Law Grp. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). "The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (N.D. Cal. 2008); *see also Microchip Tech., Inc.*, 2011 WL 2669627, at *3 ("It is clear that the parties in this action and in the Texas Case are substantially similar, although the Texas Case includes far more entities that have been accused of patent infringement.").

The Plaintiffs in *Prime III* are Prime Healthcare Services, Inc. and Prime Healthcare Foundation, Inc. In both *Prime I* and *Prime II*, the sole plaintiff is Prime Healthcare Services, Inc. But, as Harris notes, Prime Healthcare Services, Inc. and Prime Healthcare Foundation, Inc. are closely related entities.

---

[5] Prime argues that "[t]he first-to-file rule is subject to Section 1404(a)'s requirement that the transferee court must be a district 'where it might have been brought,'" citing *Cisco Systems v. TiVo, Inc.*, 2012 WL 3279532, at *3 (N.D. Cal. Aug. 10, 2012), as support. (Opp'n at 7.) Nevertheless, *Cisco* merely stated that, "[w]hile the general rule favors the forum of the first-filed action," courts "have discretion to make exceptions to this general rule in the interest of justice or expediency, as in any issue of choice of forum." *Id.* at *6 (internal quotation marks omitted). *Cisco* says nothing about importing the "where it might have been brought" requirement of § 1404(a) to the first-to-file analysis. Indeed, "there is no support for the proposition that the Court in the second-filed action must consider the 1404 transfer question (e.g., whether these actions could have been brought in [the transferee venue]) as part of the first-to-file analysis." *See Microchip Tech., Inc. v. United Module Corp.*, 2011 WL 2669627, at *7 (N.D. Cal. July 7, 2011). Thus, we decline to rule on this issue.

*FILED* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

(*See, e.g.*, *Prime II* SAC ¶ 37 (defining the term "Prime" to include both of these entities).) Thus, the existence of Prime Healthcare Foundation, Inc. in the present action does not defeat the application of the first-to-file rule. *See Blue Cove Corp. v. Odyssey Med., Inc.*, 2011 WL 1157866, at *2 (S.D. Cal. Mar. 28, 2011) (concluding substantial similarity existed between two corporate defendants in separate actions where one defendant had "held itself out interchangeably with the [other defendant] in prior dealings in this Court and with the U.S. Patent and Trademark Office").

There is no formal overlap between the defendants in *Prime III* and the previous *Prime* actions. Harris is the only defendant in *Prime III*. The *Prime I* defendants are (1) SEIU, (2) UHW, (3) Kaiser Permanente, (4) Foundation Health Plan, Inc., (5) Kaiser Foundation Hospitals, and (6) Southern California Permanente Medical Group, Inc. The defendants in *Prime II* are (1) SEIU, (2) UHW, (3) Change to Win, (4) CTW Investment Group, (5) Mary Kay Henry, (6) Dave Regan, and (7) Tom Woodruff.[6]

Nevertheless, SEIU, Regan, and UHW are featured prominently in the *Prime III* allegations and—especially UHW—are significant in *Prime III*'s claims. (*See, e.g.*, *Prime III* FAC ¶¶ 1 (stating that Harris entered into an "illegal scheme with [UHW]" under which she "refused to reasonably approve" the DCHS sale to Prime, and that Harris's refusal was "in a *quid pro quo* exchange for the union's continuing financial support of her political career"), 6 (alleging that Harris's review of Prime's DCHS bid was "biased by her political relationship with unions, including UHW and Regan . . . and her need for their political and financial support"), 41 ("Harris is dependent on her base support of labor unions, including UHW and SEIU, to fund her Senate candidacy.").) Thus, notwithstanding the strict identity of the defendants, there is substantial similarity between the relevant parties involved in each action.

Prime contends that there must be "at least two parties to satisfy the element of same or substantially similar parties." (Opp'n at 14.) However, courts have applied the first-to-file rule even where there was overlap of only one party in the relevant actions. For instance, in *IT Convergence v. Moonracer, Inc.*, 2013 WL 6512732 (N.D. Cal. Dec. 12, 2013), Moonracer, a corporation, filed an action in North Carolina against former employee John Collard for breech of a non-compete covenant in Collard's employment contract. *Id.* at *1. Collard's new employer, IT Convergence, subsequently filed a California action against Moonracer for interference with IT Convergence's employment of Collard. *Id.* While Moonracer was a party to both actions, Collard was not a Party in the later-filed California action, and IT Convergence was not a party to the first-filed North Carolina action. *See id.* at *3. However, because "IT Convergence [was] seeking relief based on Collard's employment agreement," the court concluded that the Parties were sufficiently similar for purposes of a first-to-file analysis. *Id.*

---

[6] Defendants Change to Win, CTW Investment Group, Mary Kay Henry, Dave Regan, and Tom Woodruff are all involved with SEIU, UHW, or both. (*See Prime II* SAC ¶¶ 27, 28, 30, 35, 36.) Specifically, Dave Regan is President of UHW and Vice President of SEIU. (*Id.* ¶ 28.)

FILED JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

In *Martin v. Geltech Solutions, Inc.*, 2010 WL 2287476 (N.D. Cal. June 4, 2010), a company called Geltech Solutions, Inc. filed an action against another company, Marteal Ltd., in Florida. *Id.* at *1. Two individuals—who were the sole officers and directors of Marteal—filed a subsequent complaint against Geltech and another company, RootGel West, in California. *Id.* Geltech was the only party common to both actions. Noting that the individual defendants were "the sole officers and directors of Marteal," the court determined that substantial similarity of parties existed to support the transfer of the California action to Florida under the first-to-file rule. *Id.* at *2.

Thus, there is substantial similarity between the Parties in the *Prime* actions for purposes of the first-to-file rule. This is especially true given that the first-to-file rule is not a "rigid or inflexible rule to be mechanically applied," but is "applied with a view to the dictates of sound judicial administration." *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

### 3. Similarity of Issues

As with the similarity of the parties, the issues need only be substantially similar for the first-to-file rule to apply. *Adoma*, 711 F. Supp. 2d at 1148. Although the specific claims in *Prime III* are different than those in the prior *Prime* actions, the issues in all these actions are substantially similar. The *Prime II* SAC asserts that the RICO conspiracy, among other things, attempted to "thwart Prime's acquisition of additional hospitals." (*Prime II* SAC ¶ 9; *see also id.*¶¶ 12 (stating that the conspiracy attempted to "block all of Prime's attempts at further hospital acquisitions"), 14 (same), 102 (stating that, under Regan's leadership, UHW has "interfer[ed] with Prime's hospital acquisitions"), 163 (stating that the main goal of the conspiracy was to block Prime from acquiring additional hospitals).) *Prime II* also specifically references the alleged blocking of the VVCH hospital acquisitions as part of the conspiracy's alleged wrongdoing, stating that "Defendants campaigned to block the bankruptcy sale of [VVCH] to Prime." (*Id.* ¶ 166; *see also id.* ¶¶ 167-78 (further detailing the conspiracy's blocking of the VVCH acquisition).) The *Prime II* SAC specifically proclaims that the conspiracy's influence on Harris led to her eventual denial of this sale, stating "[Harris] would not have denied the sale to Prime but for Defendant's interference." (*Id.* ¶ 172; *see also id.* ¶¶ 174-78 (describing Harris's request for a temporary restraining order preventing a financing agreement between Prime and VVCH and the eventual sale of VVCH to another bidder).)

The *Prime II* SAC also references the conspiracy's alleged blocking of the DCHS acquisition, stating that "UHW has also threatened, coerced, and restrained a neutral employer, [DCHS]—a system of six hospitals in California that Prime was attempting to purchase—with the object of forcing or requiring that neutral employer not to sell its hospitals to Prime." (*Id.* ¶ 18; *see also* ¶¶ 182 ("[I]n July 2014, Defendants . . . were successful in stopping Prime's purchase of DCHS."); 182-208 (describing the conspiracy's efforts to block the DCHS acquisition).) The *Prime II* SAC describes UHW's attempt to influence Harris's approval of the DCHS deal, stating that "Regan threatened that Defendants would work to ensure that Prime would never get approval from [Harris] unless it ceded to Defendant's various demands." (*Id.* ¶ 185.) The *Prime II* SAC contends that "UHW's coercion had the desired outcome: Attorney General Harris conditionally approved the deal but she imposed unprecedented and untenable

FILED JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

conditions on the consummation of the sale that were so onerous that Prime was forced to abandon the deal." (*Id.* ¶ 191 ("In other words, her conditional approval was an effective denial.").) Moreover, *Prime II* describes the conspiracy's strategy of gaining political influence, specifically referencing the blocking of the DCHS deal as a desired outcome of such influence. (*See id.* ¶ 280 (noting UHW's statements that "Prime Healthcare has to get approval from the attorney general of California to buy [DCHS]," and "[t]hat is an elected position; we need political power to get what we need"); *see also id.* ¶¶ 269-89 (generally detailing the conspiracy's attempts to gain political influence).)

*Prime I* contains similarly related allegations. (*See Prime I* FAC ¶¶ 8 ("Defendants agreed to jointly influence and convince potential whistleblowers, writers, government agencies, and politicians to raise specious allegations about Prime's conduct."), 293-96 (detailing the conspiracy's allegedly successful attempt to block the bankruptcy sale of VVCH to Prime), 294-96 (describing Harris's filing of a request for a temporary restraining order to prevent a financing agreement between VVCH and Prime).)

The allegations in the *Prime* actions reveal that Harris's alleged wrongful conduct in *Prime III* is an outgrowth of the activities of the purported conspiracies of *Prime I* and *Prime II*. *Prime III* centers on the rationale behind Harris's denial of the DCHS sale and, to some extent, the VVCH sale. Prime contends that the conspiracy involving UHW was integral in influencing Harris's decisions on these sales. Such conspiracy allegations are not mere "background facts" as Plaintiffs contend, (*see* Opp'n at 20), but are closely intertwined with the core of *Prime III*'s claims. In other words, the facts and issues of these three actions involve numerous overlapping aspects and are generally related. Accordingly, despite the difference in actual legal claims in these actions, the overall issues in these cases are substantially similar. The similarities are, at the very least, close enough to suggest that Judge Curiel's familiarity with the prior *Prime* actions would facilitate a more expeditious and efficient resolution of *Prime III*.

### C.   Pendency of the Prior *Prime* Actions

Even when the first-to-file rule would otherwise warrant the transfer of the case, the "balance of convenience or sound judicial administration" may "warrant a rejection of the first-to-file rule." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 991 (N.D. Cal. 2011). Plaintiffs argue that such considerations should defeat our application of the first-to-file rule in this case because "there is no case currently pending in the Southern District in [*Prime I* or *Prime II*]." (Opp'n at 22.) This argument is unpersuasive. Although the Ninth Circuit has recently affirmed the *Prime I* dismissal and the *Prime II* appeal is still pending, Judge Curiel will still likely preside over *Prime III* pursuant to the Southern District's local rules. *See* S.D. Cal. L.R. 40.1(f);[7] *see also Prime II*, 2014 WL 5422631, at *4 (N.D. Cal.

---

[7] Local Rule 40.1(f) states, "Whenever counsel has reason to believe that a pending action or proceeding on file or about to be filed is related to another pending action or proceeding on file in this or any other federal or state court (whether pending, dismissed, or otherwise terminated), counsel must

*FILED* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

Oct. 24, 2014) ("[T]he Southern District's local rules make it likely that the same judge would preside over the two cases, and that judicial economy would thereby be promoted." (internal citation omitted)). Thus, regardless of the current status of *Prime I* and *Prime II*, transfer under the first-to-file rule would serve the policies of efficiency, judicial economy, and avoidance of duplicative efforts. *Cf. Univ of Pitt. of Commonwealth of Higher Educ. v. Varian Med. Sys., Inc.*, 2008 WL 4279704, at *3 (N.D. Cal. Sept. 16, 2008) (reasoning that transfer of an action to a venue with a related action pursuant to § 1404(a) would help alleviate the "risks of duplicative proceedings and conflicting rulings," even where the related action was pending appeal). Transfer to the Southern District is therefore proper.

### D.   Conclusion

Ultimately, each of the first-to-file factors weighs in favor of transferring *Prime III* to the Southern District. Harris's Motion to Transfer based on the first-to-file rule is **GRANTED**. This action is hereby **TRANSFERRED** to the United States District Court for the Southern District of California. The clerk is directed to effect this transfer forthwith.

### III.   Motion to Dismiss

Harris's Motion to Dismiss, (Dkt. 18), is **DENIED** without prejudice to its reassertion in the transferee court.[8]

---

promptly file and serve on all known parties to each related action or proceeding a notice of related case, stating the title, number and filing date of each action or proceeding believed to be related, together with a brief statement of their relationship and the reasons why assignment to a single district judge is or is not likely to effect a saving of judicial effort and other economies. The clerk will promptly notify the court of such filing. This is a continuing duty that applies not only when counsel files a case with knowledge of a related action or proceeding but also applies after the date of filing whenever counsel learns of a related action or proceeding."

[8] Prime's Ex Parte Application to Strike New Arguments and Evidence in Defendant's Reply Brief, (Dkt. 35), which pertains solely to the briefing for the Motion to Dismiss, is **DENIED** without prejudice to its reassertion in the transferee court.

*FILED* JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | EDCV 15-1934-GHK (DTBx) | Date | March 31, 2016 |
|---|---|---|---|
| Title | *Prime Healthcare Services, Inc., et al. v. Kamala D. Harris* | | |

**IT IS SO ORDERED.**

                                                                                          :

                              Initials of Deputy Clerk         DG for Bea